FILED
2015 Aug-11  AM 07:52
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| **RASHAD MORRIS,** | \| |
| Plaintiff, | \| |
| v. | \| **Civil Action Number** |
| **STARWOOD HOTELS & RESORTS WORLDWIDE, INC., et al.** | \| **2:13-cv-00588-AKK** |
| Defendant. | \| |

## MEMORDANDUM OPINION

Rashad Morris, an African American man diagnosed with ADHD and mild mental retardation, pursues this lawsuit against his former employer, Winston Hospitality Group, Inc. ("Winston"). Doc. 27. Morris alleges that during his employment, his supervisor, Linda Foster, constructively discharged him by subjecting him to a daily barrage of race- and disability-based discriminatory conduct and a hostile environment. *Id.* at 3–4. Accordingly, Morris pursues claims for alleged violations of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), 42 U.S.C. § 1981, the Americans with Disabilities Act of 1990, 42 U.S.C. § 12112, *et seq.* ("ADA"), and the ADA Amendments Act of 2008 ("ADAAA"). Before the court is Winston's motion for summary judgment. Doc.

37. The motion is fully briefed, docs. 37, 44, 45, and ripe for review. For the reasons stated below, primarily because Morris has failed to establish that Foster's harassment was based on his race or disability or that he utilized Winston's preventative procedures, the motion is due to be granted.

## I. SUMMARY JUDGMENT STANDARD OF REVIEW

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "Rule 56 [ ] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (alteration in original). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the non-moving party, who is required to go "beyond the pleadings" to establish that there is a "genuine issue for trial." *Id.* at 324 (internal citations and quotation marks omitted). A dispute about material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Anderson*, 477 U.S. at 244 (all justifiable inferences must be drawn in the non-moving party's favor). Any factual dispute will be resolved in the non-moving party's favor when sufficient competent evidence supports that party's version of the disputed facts. *See Pace v. Capobianco*, 238 F.3d 1275, 1276, 1278 (11th Cir. 2002) (a court is not required to resolve disputes in the non-moving party's favor when that party's version of events is supported by insufficient evidence). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)). Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that a jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).

## II. FACTUAL BACKGROUND & PROCEDURAL HISTORY

The following facts reflect an assessment of the record in the light most favorable to Morris. Winston hired Morris as a houseman at the Aloft Hotel in Homewood, Alabama in September 2011, with duties consisting of cleaning public

areas of the hotel. Doc. 38-1 at 5–6. In January 2012, Foster allegedly began harassing Morris. *Id.* at 8–9. Morris asserts that Foster spoke to him on a daily basis "like he wasn't even human," threatened him about his job,[1] and attempted to provoke him to hit her by moving in close to him and leaning her face towards him.[2] *Id.* Based on Foster's alleged mistreatment, Morris decided to resign. *Id.* at 14. However, Morris returned on the day after making this decision, during which he again interacted with Foster. Among other things, Foster instructed Morris to undergo retraining to improve the speed of his cleaning. *Id.* at 13–14. At the end of the work day on June 14, 2012, Morris left a letter of resignation on Foster's desk. *Id.* at 13

## III. ANALYSIS

Morris brings claims of race and disability discrimination under Title VII, § 1981, and the ADA.[3] In considering these claims, the court notes that "[a] plaintiff may prove a claim of intentional discrimination through direct evidence, circumstantial evidence, or through statistical proof." *Rioux v. City of Atlanta*, 520

---

[1] Morris' affidavit is unclear as to whether Foster ever threatened to discharge him.

[2] Morris' mother testified that he told her that Foster had called him "irresponsible," "retarded," and "dumb." Doc. 38-2 at 10. However, Morris did not testify to this effect, and his mother's statement in her affidavit is testimonial hearsay, which the court may not consider as evidence. *Crawford v. Washington*, 541 U.S. 36, 68 (2004).

[3] Morris' ADAAA claim also contains allegations that Winston violated the Act by failing to provide a reasonable accommodation, using standards that discriminated on the basis of disability, and violating confidentiality. Doc. 27 at 6. However, Morris has not presented evidence supporting these allegations and did not address these issues in response to the motion for summary judgment. Accordingly, the court finds that Morris has abandoned these portions of his ADAAA claim. *McIntyre v. Eckerd Corp.*, 251 F. App'x 621, 626 (11th Cir. 2007).

F.3d 1269, 1274 (11th Cir. 2008). Where, as here, Morris offers only circumstantial evidence, he bears the initial burden of establishing a prima facie case. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973). To do so, Morris must show that:

> (1) [he] is a member of a protected class; (2) [he] was subjected to an adverse employment action; (3) [his] employer treated similarly situated employees outside [his] protected class more favorably; and (4) [he] was qualified to do the job.

*Burke-Fowler v. Orange Cnty., Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006) (citing *E.E.O.C. v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1286 (11th Cir. 2000)). [4] "The successful assertion of a prima facie case then creates a rebuttable presumption that the employer unlawfully discriminated against the plaintiff." *Rioux*, 520 F.3d at 1275 (internal citations and quotation marks omitted). The burden then shifts to the employer to produce evidence that it had a legitimate non-discriminatory reason for the challenged action. *Id.* If the employer satisfies its burden, the burden shifts back to the plaintiff to show "that the proffered reason really is a pretext for unlawful discrimination." *Id.* (internal citations and quotation marks omitted).

---

[4] "Title VII and 42 U.S.C. § 1981 have the same requirements of proof and utilize the same analytical framework." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1325 n. 14 (11th Cir. 2011). While the Eleventh Circuit has not decided whether the ADA provides a cause of action for disability-based harassment, other Circuits that have held it does apply the same framework used in Title VII hostile work environment claims. *See, e.g., Shaver v. Indep. Stave Co.*, 350 F.3d 716, 720 (8th Cir. 2003); *Flowers v. S. Reg'l Physician Servs, Inc.*, 247 F.3d 229, 235 (5th Cir. 2001); *Fox v. Gen. Motors Corp.*, 247 F.3d 169, 175 (4th Cir. 2001). The ADAAA does not modify the analytical framework applied to ADA claims. *Beatty v. Hudco Indus. Products, Inc.*, 881 F. Supp. 2d 1344, 1351 (N.D. Ala. 2012). Accordingly, the court will not distinguish between Title VII and the other statutes in addressing the merits of Morris' claim.

Only the last two prongs of the prima facie case are in dispute. According to Winston, Morris cannot show that he suffered an adverse employment action or that Winston treated a similarly situated employee outside his protected class more favorably. The court will address each argument in turn.

*A. Morris Cannot Show the Existence of a Hostile Environment That is Sufficient to Support a Constructive Discharge Claim*

Morris contends that Foster's harassing conduct created an unbearable workplace that forced him to resign.

> A constructive discharge can result when the employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation . . . . If the intolerable working conditions are the result of a hostile environment caused by . . . harassment, then the constructive discharge violates Title VII[, § 1981, and the ADA].

*Huddleston v. Roger Dean Chevrolet, Inc.*, 845 F.2d 900, 905 (11th Cir. 1988) (internal quotation marks omitted) (citing *Henson v. City of Dundee*, 682 F.2d 897, 907 (11th Cir. 1982); *Young v. Sw. Savs. & Loan Assoc.*, 509 F.2d 140, 144 (5th Cir. 1975)). The hostile work environment must be from harassment that is "based on a protected characteristic of the employee" and it must be "sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment." *Miller v. Kenworth of Dothan*, *Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002).

Also, and relevant here, a constructive discharge claim requires the plaintiff to show that the "working conditions [became] so intolerable that a *reasonable*

person in the employee's position would have felt compelled to resign[.]" *Pa. State Police v. Suders*, 542 U.S. 129, 141 (2004) (emphasis added). The parties are at odds regarding the relevant standard for what constitutes a "reasonable person." Morris argues, based on *Atkins v. Virginia*, 536 U.S. 304 (2002), that he need only show that a reasonable person with his mental disability would have resigned to satisfy this objective test. Doc. 44 at 8. This contention is unavailing for several reasons. First, *Atkins* dealt specifically with the moral culpability of criminal defendants with mental disabilities, *Atkins*, 536 U.S. at 305 ("[Symptoms of mental retardation] do not warrant an exemption from criminal sanctions, but they do diminish [defendants'] personal culpability"), and contains no language that offers support for reducing the standard for a civil plaintiff with mental disabilities in the constructive discharge context. Indeed, Morris has failed to direct the court to any cases that have extended *Atkins* to civil cases.

Second, in focusing on what constitutes a reasonable person, Morris ignores that, to show a constructive discharge, he must first establish the existence of a hostile work environment by showing that Foster's harassment was sufficiently severe to alter the terms of his employment. Factors to consider in evaluating the severity of an allegedly hostile environment include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes

7

with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993). While Morris does allege that the harassing conduct occurred on a daily basis, doc. 38-1 at 9; *see Dees v. Johnson Controls World Servs., Inc.*, 168 F.3d 417, 418 (holding "almost-daily abuse" was sufficiently frequent), the only specific harassment he alleges consists of verbal reprimands relating to his work and body language meant to provoke him into striking Foster, doc. 38-1 at 8.

These contentions are insufficient because a supervisor's criticism of an employee's work performance rarely rises to the level of objective severity necessary to sustain a constructive discharge claim. In fact, "a constructive discharge claim based solely on evidence of close supervision of job performance must be critically examined so that [Title VII, § 1983, and the ADA are] not improperly used as a means of thwarting an employer's nondiscriminatory efforts to insist on high standards." *Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1234 (11th Cir. 2001) (quoting *Clowes v. Allegheny Hosp.*, 991 F.2d 1159, 1162 (3d Cir. 1993)). Consequently, while the court is sympathetic to Morris' subjective feeling that Foster treated him in a way that made him feel "like he wasn't even human," doc. 38-1 at 8, this factor alone is insufficient because there are no facts suggesting that discriminatory animus motivated the verbal reprimands Foster issued other than inadmissible hearsay, *see* supra n. 2, or that Foster's conduct was so objectively severe that it would have caused any reasonable employee to resign.

Moreover, while Foster's alleged attempts to provoke Morris to hit her fall significantly short of effective supervision, the Eleventh Circuit has held much more invasive physical contact insufficiently severe to create a hostile work environment. *See Holder v. Nicholson*, 287 F. App'x 784, 792 (11th Cir. 2008) (holding that co-worker slapping plaintiff's arm and snatching phone away from her was not sufficiently severe to create a hostile work environment); *Henderson v. Waffle House, Inc.*, 238 F. App'x 499, 502–03 (11th Cir. 2007) (holding that restaurant manager pulling plaintiff's hair was not sufficiently severe or pervasive to alter terms of employment); *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1248 (11th Cir. 1999) (holding that supervisor brushing hip against plaintiff's hip, making sniffing sounds at her groin area, and constantly following her did not create sex-based hostile work environment).

Additionally, even if Foster's alleged conduct was objectively severe or pervasive, the affirmative defense outlined in *Faragher* and *Ellerth* would shield Winston from liability for the alleged constructive discharge.[5] *See Faragher v. City of Boca Raton*, 524 U.S. 775 (1998); *Burlington Indus., Inc.*, *v. Ellerth*, 524 U.S. 742 (1998). This affirmative defense applies when an employer shows "(1) that it had installed a readily accessible and effective policy for reporting and resolving complaints of . . . harassment, and (2) that the plaintiff unreasonably failed to avail

---

[5] Morris does not address this asserted defense or dispute the facts on which it is based in his reply brief.

[himself] of the employer-provided preventative or remedial apparatus." *Pa. State Police*, 542 U.S. 129 at 134. It is undisputed that Winston's employee manual details a non-discrimination and non-harassment policy that provides employees with an avenue to report alleged harassment, and that Morris received, read, and signed the employee handbook given to him. Docs. 38-1 at 23–24, 38-4 at 8–10, 38-6. It is likewise undisputed that, because of generalized fears of retaliation, Morris never reported Foster's conduct to Winston. Docs. 38-1 at 9–11, 38-3 at 2.[6] However, generalized fears of job loss do not justify a failure to take advantage of preventative anti-harassment procedures. *See Baldwin v. Blue Cross/Blue Shield of Ala.*, 480 F.3d 1287, 1307 (11th Cir. 2007). Accordingly, Winston cannot be held liable for the alleged harassment even if Morris is able to show that he suffered an adverse employment action or that Winston constructively discharged him.

---

[6] Morris concedes that Foster never made any statements threatening to discharge him if he reported her to Winston. Doc. 38-1 at 11. Instead, he testified that he concluded that Foster would terminate him if he reported her based on Foster's statement to his mother that she had a friend who wanted to work for Winston. *Id.* However, in his response brief, Morris asserts that Foster did threaten him with termination if he complained about his treatment, doc. 44 at 4, which contradicts his testimony at his deposition, as noted in Winston's motion disputing the facts presented in Morris' brief, doc. 46 at 2. Even ignoring that statements in briefs are not evidence, *Skyline Corp. v. N.L.R.B.*, 613 F.2d 1328, 1337 (5th Cir. 1980), the court denies credence to this assertion because it is belied by Morris's deposition testimony, *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing sides tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adapt that version of facts for purposes of ruling on a motion for summary judgment").

*B. Morris Fails to Show That Foster Discriminated Against Him Because of His Race or Disability*

Morris contends also that Foster discriminated against him because of his race and disability. In support of this contention, Morris points to Jennifer Lane, a Caucasian female who also suffers from a disability, doc. 38-1 at 12, and who was employed in the Aloft Hotel's laundry department, doc. 38-3 at 2. Although Foster verbally disciplined Lane for incidents involving Lane lying and walking off the job, Morris takes issue with Foster's failure to discharge Lane, and contends that Foster treated him differently. Doc. 38-1 at 11–12. Morris' reliance on Lane to prove disparate treatment fails for two reasons. First, Lane cannot be a proper comparator for the disability discrimination claim because she is also disabled, doc. 38-1 at 12, and thus not outside Morris' protected class for purposes of the ADA claim. *See Burke-Fowler*, 447 F.3d at 1323 (disparate treatment plaintiff must show that "[his] employer treated similarly situated employees *outside [his] protected class* more favorably) (emphasis added). Second, Lane was not treated more favorably than Morris. The adequacy of the comparators is crucial, and the court must consider whether the employees were, in fact, similarly situated and more favorably treated. *See Marshall v. W. Grain Co.*, 838 F.2d 1165, 1168 (11th Cir. 1998); *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997) ("To make a comparison of the plaintiff's treatment to that of non-minority employees, the plaintiff must show that he and the other employees are similarly situated in all

11

respects.") (internal citations and quotation marks omitted). Basically, Morris takes issue with Foster's decision to issue verbal reprimands to Lane and contends that Foster should have discharged Lane for lying to Foster and walking off the job on multiple occasions. Doc. 38-1 at 12. The court is not charged with dictating to employers the manner in which to discipline their employees. *See Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010) ("We do not sit as a 'super-personnel department,' and it is not our role to second-guess the wisdom of an employer's business decisions—indeed the wisdom of them is irrelevant—as long as those decisions were not made with a discriminatory motive.") (quoting *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000). Rather, the court is tasked solely with ascertaining whether Morris has established that his employer treated him differently than a similarly situated employee because of race or disability. *Id.* Morris has not made such a showing because the evidence is unequivocal that Foster treated Lane and Morris similarly, i.e. she only verbally reprimanded them, and neither Morris nor Lane ever received a disciplinary write up. Doc. 38-3 at 2.

## IV. CONCLUSION

For the reasons fully explained above, Morris failed to meet his burden of establishing a prima facie case of discrimination. Consequently, Winston's motion

for summary judgment is due to be granted. The court will enter a

contemporaneous order consistent with this opinion.

**DONE** the 11th day of August, 2015.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE